GAUTAM DUTTA, ESQ. (State Bar No. 199326)
Business, Energy, and Election Law, PC
1017 El Camino Real # 504
Redwood City, CA  94063
Telephone:  415.236.2048; Fax:  213.405.2416
Email:  Dutta@BEELawFirm.com

Attorneys for Plaintiff
HAONING RICHTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAONING RICHTER,<br><br>       *Plaintiff*,<br><br>  vs.<br><br>ORACLE AMERICA, INC., et al.,<br><br>       *Defendants*. | CASE NO. 5:22-cv-04795-BLF<br><br>**PLAINTIFF HAONING RICHTER'S (1) OPPOSITION TO DEFENDANT ORACLE AMERICA, INC.'S MOTION TO DISMISS AND MOTION TO COMPEL ARBITRATION, AND (2) OBJECTIONS TO DEFENDANT'S MOVING PAPERS; POINTS AND AUTHORITIES**<br><br>Hearing Date:  Jan. 26, 2023, 9 am<br><br>Judge:  Hon. Beth Labson Freeman<br><br>Courtroom:  3 |

1

## TABLE OF CONTENTS

2

Table of Authorities                                                      3

Introduction                                                             6

Background                                                               6

Legal Analysis                                                          16

Objections                                                              28

Conclusion                                                              30

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION AND OBJECTIONS

TABLE OF AUTHORITIES

| Case | Page(s) |
|---|---|

*Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal.App.4th 776, 787 (Cal.Ct.App. 1994)     25, 26

*Adler v. Vaicius*, 21 Cal.App.4th 1770, 1775 (Cal.Ct.App. 1993)     25

*Archer and White Sales, Inc. v. Henry Schein*, 935 F.3d 274, 283 (5th Cir. 2019), *cert. dismissed as improvidently granted*, -- U.S. --, 141 S.Ct. 656 (2021)     21-23, 30

*Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)     27

*Cesca Therapeutics Inc. v. Syngen, Inc.*, No. 2:14-02085-GEB-KJN, 2015 U.S. Dist. Lexis 137816 (E.D. Cal. Oct. 8, 2015)     19, 20

*Cisco Systems, Inc. v. Chung*, 462 F.Supp.3d 1024, 1039 (N.D. Cal. 2020)     21-23

*Coscarelli v. ESquared Hospitality LLC*, 364 F.Supp.3d 207, 217 (S.D.N.Y. 2019)     21, 23

*Cruise v. Kroger Co.*, 233 Cal.App.4th 390, 398 (Cal.Ct.App. 2015)     17, 20

*Continental Heller Corp. v. Amtech Mechanical Svcs., Inc.*, 53 Cal.App.4th 500, 503 (Cal.Ct.App. 1997)     17

*Cuellar v. Joyce*, 596 F.3d 505, 512 (9th Cir. 2010)     29

*Davis v. Kozak*, 53 Cal.App.5th 897, 916 (Cal.Ct.App. 2020)     16, 17, 20

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)     24

*Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998)     27, 28

*GEICO v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)     18

*Geographical Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1105-06 (9th Cir. 2010)     25, 26

*In re American Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2nd Cir. 2011)     18, 19

*Keyes v. Coley*, No. 09-1297, 2011 U.S. Dist. LEXIS 59625, at *8-*9 (E.D. Cal. June 2, 2011)     29

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018)     29

OPPOSITION AND OBJECTIONS

*Lance v. Dennis*, 546 U.S. 459, 466 (2006)    24

*Lotsoff v. Wells Fargo Bank, N.A.*, No. 3:18-cv-02033-AJB-MDD, 2019 U.S. Dist. Lexis 169373 (S.D. Cal. Sept. 30, 2019)    26

*Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987)    27, 28

*Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)    25

*Miles v. Coleman*, No. 15-cv-3696 (WMW/FLN), 2017 U.S. Dist. Lexis 103745 (D. Minn. July 5, 2017)    24

*Morgan Stanley & Co. v. Couch*, 659 F. App'x 402, 406 (9th Cir. 2016)    19

*Morgan Stanley & Co., LLC v. Couch*, 134 F.Supp.3d 1215, 1234 (E.D. Cal. 2015)    18, 19

*Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005)    23

*NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1018 (2nd Cir. 2014)    18, 22

*Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal.App.4th 1115, 1121-22 (Cal.Ct.App. 2012)    26

*Ocean Thermal Energy Corp. v. Coe*, No. LACV19-05299-VAP-JPR, 2020 WL 7414745, at *3 (C.D. Cal. Nov. 16, 2020)    27, 28

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)    25

*Parker Law Firm v. Travelers Indem. Co.*, 985 F.3d 579, 583 (8th Cir. 2021)    24

*Pearson v. P.F. Chang's China Bistro*, No. 13-cv-2009-JLS, 2015 U.S. Dist. Lexis 184157, at *12 n.4 (S.D. Cal. Feb. 23, 2015)    26

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005)    18

*Roman v. Superior Court*, 172 Cal.App.4th 1462, 1466 (Cal.Ct.App. 2009)    17, 20

*Samaniego v. Empire Today LLC*, 205 Cal.App.4th 1138, 1147 (Cal.Ct.App. 2012)    16

*Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 924 (9th Cir. 2011)    20

*Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712 (9th Cir. 1992)    25

*Serafin v. Balco Properties, Ltd., LLC*, 235 Cal.App.4th 165, 176-77 (Cal.Ct.App. 2015)    17, 20

OPPOSITION AND OBJECTIONS

*Thelen Reid Brown Raysman & Steiner LLP v. Marland*, 319 Fed.Appx. 676, 678-79 (9th Cir. 2009)    19

*Thomas v. Quintero*, 126 Cal.App.4th 635, 652, 664 n.21 (Cal.Ct.App. 2005)    25

*U.S. v. Alpine Land Reservoir Co.*, 174 F.3d 1007 (9th Cir. 1999)    27

OPPOSITION AND OBJECTIONS

POINTS AND AUTHORITIES

**I.    Introduction**

Oracle's Motion to Dismiss and Motion to Compel Arbitration must both be denied, for Ms. Richter has a contractual right to transfer her arbitral claims to this Court, pursuant to an agreement (Proprietary Information Agreement) that Oracle required her to sign as a condition of employment.  In a nutshell, Oracle claims that three strands of federal law (*Rooker-Feldman* Doctrine, Full Faith and Credit Statute, and Anti-Injunction Act) bar Ms. Richter from vindicating her contractual right.  Yet as we will show, none of those strands can overcome Ms. Richter's right to bring her arbitral claims to federal court.  Accordingly, this Court must deny Oracle's disingenuous bid to escape federal jurisdiction.

**II.   Background**

*Note:  Unless otherwise indicated, all facts with respect to Section II(A) derive from Ms. Richter's Complaint.  To that end, all facts recited regarding Oracle's Proprietary Information Agreement derive from Ms. Richter's accompanying Declaration; and all facts recited regarding procedural background derive from the accompanying Declaration of Gautam Dutta.*

A.    Brief Factual Background

This case of corporate wrongdoing – a case of retaliation where a member of the senior management team was terminated simply for doing her job – spotlights the toxic work environment, deficient compliance culture, and lack of management accountability and control at one of the world's leading tech companies:  Defendant **Oracle America, Inc.** ("Oracle").

Plaintiff **Haoning Richter,** an Asian American born in China, joined Oracle as Director of the Process Controls Office of Oracle's Global Real Estate and Facilities organization on June 17, 2013 (Richter Decl. ¶3).  In that capacity, Ms. Richter reported to then-Vice President Randall Smith, who reported directly to Oracle CEO Safra Catz.  Oracle CEO Safra Catz had approved the creation of Ms. Richter's position to address a number of significant compliance issues.  Ms. Richter's employment began on June 17, 2013 and was involuntarily terminated on Nov. 7, 2017.

*Oracle's Proprietary Information Agreement.*  As a condition of her employment, Ms. Richter was required to agree to the terms of Oracle's Proprietary Information Agreement ("PIA",

OPPOSITION AND OBJECTIONS

Complaint **Exh. A,** authenticated by accompanying Richter Decl.).  In relevant part, Paragraph 12 of the PIA states that if "any legal action or proceeding involving Oracle … is *in any way connected with this agreement*", then a lawsuit "may be instituted in" – and Ms. Richter "agree[s] to submit to the jurisdiction of, and agree[s] that venue is proper in *federal court* in San Francisco or San Jose, California or state court in San Mateo County or Santa Clara County, California." Complaint **Exh. A** ¶12, italics added.

Oracle's employment and arbitration agreement (the "Arbitration Agreement", Complaint **Exh. C,** authenticated by accompanying Dutta Decl.) expressly references the PIA:  "In addition to signing this Agreement as a condition of employment, you *must also sign* the Proprietary Information Agreement included in the New Hire Offer Packet." (italics added).

In the PIA, Ms. Richter stated that she "w[ould] not enter into any agreement, written or oral, that conflicts with the provisions of this agreement."  The PIA, which does not reference the Arbitration Agreement, further stated that the PIA would "survive [Ms. Richter's] employment." Complaint **Exh. A** ¶14.

According to a document (Complaint **Exh. B,** authenticated by accompanying Dutta Decl.) produced by Oracle's custodian of record, Ms. Richter electronically agreed to the terms of the PIA at 3:56 pm on May 20, 2013, one minute after she had electronically agreed to the terms of the Arbitration Agreement.

*Recognition of Ms. Richter's Work.*  Each year during her tenure, Ms. Richter received positive, written performance reviews, and was awarded a number of performance-related stock bonuses.  In Mar. 2017, Oracle selected Ms. Richter to join Oracle's invitation-only, Accelerated Executive Insight program.  Ms. Richter was the only employee chosen to represent her Global Real Estate and Facilities organization, which has over 1,000 employees.

*Retaliation Suffered by Ms. Richter.*  Throughout her tenure, Ms. Richter endured a series of retaliatory actions for simply doing her job.  Just as one example, in Dec. 2016, Ms. Richter heard from two different sources that Vice President Ken Heth and Director of Operations Patrizia Muckle – two top officials in Oracle's Japan and Asia Pacific region – were using

OPPOSITION AND OBJECTIONS

proprietary process documents belonging to SAP.  Ms. Richter shared, with Vice President Randall Smith (her supervisor), the information regarding the use of SAP's proprietary documents.  In response, Mr. Smith instructed Ms. Richter *not* to perform any investigation of the matter, and told her that he would raise the issue with Mr. Heth and Ms. Muckle.

Subsequently, after engaging in a protracted, contentious email exchange with Ms. Richter, Mr. Heth publicly humiliated Ms. Richter at a May 3, 2017 audit kickoff meeting, in front of one of her subordinates and a group of Oracle directors, managers, and individual contributors.

On Oct. 23, 2017, one week before she was told that her employment would be terminated, Ms. Richter was subjected to a brutal, 45-minute telephone interrogation regarding items from her prior expense reports.  During that call, Oracle Senior Employment Practices Consultant Mark Lane explicitly referred to the fact that Ms. Richter is a first-generation immigrant:  "You are not from this country.  How long have you been here?  How many places have you lived?"  Referring to the country where Ms. Richter was born, Mr. Lane then sneered: "I know *your country* has this gift culture."

Throughout the call, Mr. Lane subjected Ms. Richter to an improper, faux-Perry Mason-style interrogation, which consisted of repeated – and picayune – questions that implied that she had committed grave wrongdoing.  Just as one example, Mr. Lane asked:  "You expensed a lot of coffee.  You purchased a coffee tumbler at Peet's Coffee in 2016.  *Why did you do that?*"

*The Termination of Ms. Richter's Employment.*  On Nov. 2, 2017, Ms. Richter's then-supervisor (then-Vice President Randall Smith) told her that her employment at Oracle would be terminated.   Subsequently, her employment at Oracle terminated on Nov. 7, 2017.

At the time her employment was terminated, Ms. Richter was finalizing Oracle's Statement of Work (SOW) with KPMG for an audit of a construction project in Seattle.  In that capacity, Ms. Richter was working closely with a KPMG Director and a KPMG Manager.  At the same time, Ms. Richter was also finalizing Oracle's internal audit responses to address Oracle internal audit findings on behalf of the global teams of Real Estate and Facilities.  In addition,

OPPOSITION AND OBJECTIONS

Ms. Richter had also been working with Oracle's Global Procurement team and the legal counsel of Oracle's Procurement team.

Moreover, one month before Ms. Richter was terminated, Mr. Smith had authorized her to fly to Dublin, Ireland to conduct a joint audit of a construction project with the PwC audit team. Ms. Richter had previously made a roundtrip flight reservation for Nov. 6, 2017 – the Monday *after* she was told that she would be terminated – to fly from the Bay Area to Dublin, Ireland in order to perform the on-site audit with the PwC team.

Ms. Richter's sudden disappearance gravely damaged her reputation and employment prospects within and outside of Oracle – especially in the tightly knit audit community, in which Oracle, PwC, and KPMG play outsized roles. Ms. Richter has experienced profound pain and sadness to this day, and still has difficulty sleeping. To date, Ms. Richter has been unable to find comparable new employment.

B.    Relevant Procedural Background

*Filing of Complaint with State Court*.  On Oct. 29, 2018, Ms. Richter initiated an action, entitled *Haoning Richter v. Oracle America, Inc.* (Santa Clara Sup. Ct. No. 18-CV-337194), with the California Superior Court, Santa Clara County (the "State Court").  (A true and correct copy of the complaint that Ms. Richter filed with the State Court has been attached as Dutta Decl. **Exh. 19.**)

*Transfer of Ms. Richter's Non-PAGA Claims to Arbitral Proceeding*.  On May 3, 2019, the State Court ruled, in an order (Dutta Decl. **Exh. 8**), that Ms. Richter was bound by the terms of an arbitration agreement (the "Arbitration Agreement").  On that basis, the State Court ruled that all of Ms. Richter's claims, except for her claims brought under the Private Attorney General Act (Labor Code §§2698, et seq., hereinafter "PAGA"), were subject to arbitration.  As a result, all but Ms. Richter's PAGA claims were transferred to an ongoing JAMS arbitral proceeding (JAMS Ref. No. 1100106052, the "Arbitral Proceeding").  Ms. Richter's PAGA claims were stayed pending the outcome of the Arbitral Proceeding.

To date, no arbitral judgment has been rendered as to any of Ms. Richter's claims against

OPPOSITION AND OBJECTIONS

Oracle.  Ms. Richter alleges all of her non-PAGA claims against Oracle in this action.  Ms. Richter's non-PAGA claims against Oracle Human Relations Vice President Joyce Westerdahl (relating to the untimely production of employment records) were dismissed from the arbitral proceeding on Sept. 21, 2021.  Ms. Richter will not pursue any claims against Ms. Westerdahl in this action, and will not pursue any of her PAGA claims (which are pending before the State Court) in this action.

*Ms. Richter's Retention of Oracle-Related Documents.*  From the onset of this litigation in 2018, Oracle had actual notice that Ms. Richter had retained Oracle-related documents.  For instance, Paragraphs 68 and 69 of Ms. Richter's State Court Complaint (Dutta Decl. **Exh. 19**) made reference to, and quoted from, email correspondence from 2017 between Ms. Richter and Oracle Vice President Ken Heth, with respect to the issue of whether Mr. Heth and members of his team had been using SAP proprietary documents at Oracle.

*RPD Item 2.*  Two years after this litigation was filed, Oracle requested, as part of Item 2 ("Item 2") of a Nov. 3, 2020 Request for Production of Documents (Set 1) (hereinafter, "RPD", Dutta **Exh. 1**), documents that Ms. Richter had retained from her employment at Oracle:

> Any and all DOCUMENTS that YOU *retained or kept* in YOUR possession from YOUR employment at ORACLE, including, but not limited to, performance evaluations regarding YOU or members of YOUR team at ORACLE; expense reimbursement information for YOU or members of YOUR team at ORACLE; ORACLE policies and procedures relating to ethics, compliance, sourcing practices, or vendor selection; and DOCUMENTS relating to SAP (italics added).

In response, on Dec. 15, 2020 Ms. Richter produced documents responsive to Item 2, without waiving the objections (including overbreadth, ambiguity, and lack of relevance) that were raised in her responses (the "RPD Responses", Dutta Decl. **Exh. 2**) to Item 2:

> Objection.  The information sought is *irrelevant* to the subject matter of this litigation and is not reasonably calculated to lead to admissible evidence; and the Item is *overbroad*.  The words "YOU" and "YOUR", the word "DOCUMENTS", the phrase "expense reimbursement information", the words "ethics" and "compliance", and the phrases "from your employment" and "DOCUMENTS relating to SAP" are *vague and ambiguous*.  *Without waiving those objections*, Ms. Richter responds:  Ms. Richter will produce (or has already produced) all responsive documents in her possession, custody, on control (italics added).

OPPOSITION AND OBJECTIONS

1

2          Subsequently, on Jan. 4, 2021 Oracle sent Ms. Richter a meet-and-confer letter (Dutta

3   Decl. **Exh. 3**) in connection with her RPD Responses.  Oracle's letter did not address Item 2, and

4   the Parties did not discuss Item 2 in any meet-and-confer communications.  The 45-day deadline

5   under California law to file any motion to compel with respect to Item 2 passed on Jan. 29, 2021.

    *See* CCP §2031.310(c).

6          *Oracle's Motion to Impound Ms. Richter's Personal Computer.*  Nearly eight months after

7   its 45-day deadline expired, Oracle sought a forensic audit of Ms. Richter's personal computer (a

8   MacBook), on the false ground that Ms. Richter had improperly withheld documents responsive

9   to Item 2.

10         Before her personal computer was impounded, Ms. Richter had produced approximately

11  4,000 pages of documents to Oracle.  In over 20 hours of deposition questioning prior to Sept. 17,

12  2021, Oracle did not ask Ms. Richter how she had obtained those documents.  During a Sept. 17,

13  2021 deposition, Oracle asked, for the first time, how Ms. Richter how she had obtained those

14  documents.

15         In response, Ms. Richter stated that she had retained Oracle-related documents on her

16  personal computer after learning that her employment would be terminated.  She further testified

17  that she retained those documents because she sought to determine the true reason behind her

18  sudden firing.  Ms. Richter has only used the Oracle Documents to litigate her legal claims and

19  vindicate her legal rights in this litigation.  Richter Decl. ¶14.

20         Contrary to Oracle's claim, Ms. Richter did not commit any discovery misconduct.  She

21  did not improperly withhold any documents in response to Item 2.  Ms. Richter raised objections

22  to Item 2, and Oracle did not contest those objections within the statutory, 45-day period.  *See*

23  CCP §2031.310(c).

24         During a Sept. 20, 2021 conference call with the arbitrator, Oracle (1) claimed that Ms.

25  Richter had violated the PIA, and (2) claimed that by violating the PIA, Ms. Richter may have

26  violated federal law.  In response, and without seeking written briefs from both sides, the

27  arbitrator entered a preservation order (the "Preservation Order", Dutta Decl. **Exh. 4**) on that

28

OPPOSITION AND OBJECTIONS

same date.  The Preservation Order required Ms. Richter to "preserve intact" her personal computer.

The next day (Sept. 21, 2021), Oracle filed a Motion for Forensic Examination.  Dutta Decl. **Exh. 5.**  (Out of an abundance of caution, Ms. Richter has not attached the exhibits to every motion attached to the accompanying Declaration of Gautam Dutta, but would be happy to provide them upon the Court's request.)  In that motion, Oracle (1) claimed that Ms. Richter violated the PIA, and (2) asserted that it had the legal right to litigate any PIA-based claims against Ms. Richter in the arbitral proceeding.  Dutta Decl. **Exh. 5,** at 6, 8 ("[A] forensic examination could reveal additional evidence supporting a *breach of Claimant's PIA* or other independent claims against [Ms. Richter].  To the extent Oracle may have such a claim based on this newly-learned information, it should be resolved in this litigation.") (italics added).  In her opposition papers, Ms. Richter stated that she had the legal right under the PIA to litigate any PIA-related issues in a judicial forum.  Dutta Decl. **Exh. 6,** at 2.

One day later (Sept. 22, 2021), during a conference call of the Parties with the arbitrator, the arbitrator asked Oracle's counsel to inquire into the availability of a forensic computer vendor that had been recommended by Oracle's counsel.  That same day, the arbitrator issued an order (Dutta Decl. **Exh. 7**) that set a hearing on Oracle's Motion for Forensic Examination for Sept. 29, 2021.  In that same order, the arbitrator directed Oracle's counsel to promptly inquire into the availability of a forensic computer vendor that had been recommended by Oracle's counsel.

Ms. Richter's personal computer held sensitive, private information not only of herself, her spouse, other family members, and her friends, privileged communications with her legal counsel, as well as confidential information of hundreds of third parties, including but not limited to:  Santa Clara University's confidential policies, processes, contracts, and Ms. Richter's personnel files; confidential records of hundreds of her current and former students at Santa Clara University; confidential records of her former students at University of California – Santa Cruz Silicon Valley Extension; confidential, NDA-protected personal records of hundreds of executive members of Financial Executives International (Silicon Valley Chapter); confidential, NDA-

OPPOSITION AND OBJECTIONS

protected information of the International Association of Privacy Professionals; and personal and confidential information of the members (who are legal professionals) of the Bay Area Ethics and Compliance Association.  Richter Decl. ¶16.

Ms. Richter used her personal computer regularly in connection with her teaching position at Santa Clara University.  To that end, Ms. Richter took her personal computer whenever she went to the Santa Clara University campus or met with students near campus.  Richter Decl. ¶17.

*The Arbitral Impoundment of Ms. Richter's Computer.*  On Sept. 29, 2021, Ms. Richter filed an *ex parte* Application (Dutta Decl. **Exh. 9**) with the State Court for a temporary restraining order (TRO) to enjoin the impoundment of her personal computer and the Arbitral Proceeding as a whole.  In her Application, Ms. Richter asserted, *inter alia*, that the State Court had the authority to hear the entirety of Ms. Richter's claims, because the PIA entitled her to transfer her arbitral claims to the State Court.

The next day (Sept. 30, 2021), while Ms. Richter's TRO Application was still pending, the arbitrator granted Oracle's request to impound her Personal Computer, by way of a written order (the "Impoundment Order", Dutta Decl. **Exh. 10**).  In the Impoundment Order, the arbitrator granted Oracle's impoundment request.  Specifically, the arbitrator's Impoundment Order overruled Ms. Richter's overbreadth objections to Item 2.  Ms. Richter had raised those objections *nearly one year earlier* (on Dec. 15, 2020).

On Oct. 4, 2021 the State Court issued an order (Dutta Decl. **Exh. 11**) that denied Ms. Richter's TRO Application.

Subsequently, at approximately 7 am on Oct. 5, 2021, Ms. Richter's personal computer was impounded at her home.  Richter Decl. ¶15.  As a result, the constitutional right to privacy of Ms. Richter, her spouse, other family members, and third parties was violated.  Moreover, as part of a privilege review of certain documents that were obtained from Ms. Richter's personal computer, the arbitrator has granted Oracle counsel access to review the contents of a number of documents containing the private information of Ms. Richter, her spouse, relatives, and other third parties.

OPPOSITION AND OBJECTIONS

The arbitrator's Impoundment Order (Dutta Decl. **Exh. 10**) did not make any determination as to whether Ms. Richter's copying and retention of Oracle files constituted improper or wrongful conduct.  For this reason, Ms. Richter did not proceed with her effort to enjoin the Arbitral Proceeding at that time.

*Oracle's Concealment of Ms. Richter's Work Computer.*  On **Oct. 7, 2021,** after being consecutively asked by Ms. Richter's counsel and by the arbitrator, Oracle disclosed that it had possession of the work computer (the "Work Computer") which Ms. Richter had used during her employment at Oracle – and had returned to Oracle on Nov. 6, 2017.  A subsequent forensic examination of the Work Computer revealed that although partial backups of that computer had been made, Oracle did not retain those backups even though its own policies required it to do so.

Oracle later disclosed that it had located the Work Computer on **Sept. 29, 2021:**  the *same* day on which Ms. Richter had filed her TRO Application, and the day *before* the arbitrator granted Oracle's motion to impound Ms. Richter's personal computer.

Oracle thus concealed, from Ms. Richter and the arbitrator, the fact that it had located the Work Computer, for the nine-day period from Sept. 29, 2021 through Oct. 7, 2021.  Had Oracle's counsel voluntarily disclosed that the Work Computer had been located, a reasonable arbitrator would have denied – or at least delayed ruling on – Oracle's motion to impound Ms. Richter's personal computer.

Due to Oracle's belated disclosure that it had possession of the Work Computer, the arbitrator cancelled the Oct. 25, 2021 hearing date for the Arbitral Proceeding, by way of a written order.  Dutta Decl. **Exh. 12.**  This marked the *second* time that the arbitral hearing was continued due to Oracle's belated production of evidence.  Specifically, the arbitrator had continued the original hearing date after Oracle produced a critical document on the eve of the hearing.  That document proved that Ms. Richter had been awarded a performance-based bonus and salary increase just days before her employment was terminated.  Dutta Decl. ¶¶46, 47; *id.* **Exh. 17** (Ms. Richter's Dec. 10, 2020 motion to continue hearing) **& Exh. 18** (Dec. 14, 2020

OPPOSITION AND OBJECTIONS

arbitral order continuing hearing from Feb. 1, 2021 until Oct. 25, 2021).

*Ms. Richter's Discovery That Oracle Had Withheld Evidence.*  After conducting a forensic examination of the Work Computer, Ms. Richter learned that Oracle had failed to produce a number of relevant documents, including documents relating to a flight-related medical accommodation which Oracle had raised (during a Sept. 17, 2021 deposition) to improperly challenge Ms. Richter's credibility.  In response, on Apr. 25, 2022 Ms. Richter filed a Motion for Sanctions (Dutta Decl. **Exh. 13**) against Oracle.

In its Opposition (Dutta Decl. **Exh. 14**) to Ms. Richter's Motion for Sanctions, Oracle claimed that Ms. Richter had violated the PIA:  "[Ms. Richter's] actions violated Oracle policy and her *Proprietary Information Agreement*."  Dutta Decl. **Exh. 14,** at 3:3-3:4 (italics added).  To that end, Oracle claimed that Ms. Richter was not entitled to relief because she purportedly had "unclean hands" Dutta Decl. **Exh. 14,** at 22:5-22:23 (italics added).  Characterizing Ms. Richter's actions as "*theft* of data and documents" (Dutta Decl. **Exh. 14,** at 1:28 (italics added)), Oracle stated that it will seek sanctions against Ms. Richter for her "misconduct":  "Oracle intends to seek sanctions when it finally receives *all of the documents [Ms. Richter] kept* and is able to examine [Ms. Richter] regarding the full circumstances of her *misconduct*."  Dutta Decl. **Exh. 14,** at 2:3-2:5 (italics added).

In her Reply (Dutta Decl. **Exh. 15**), Ms. Richter stated that she had the legal right under the PIA to litigate any PIA-related issues in a judicial forum, if Oracle continued to insist that she had "improperly copied Oracle files".  Dutta Decl. **Exh. 15,** at 8 & n.25.

*The Arbitrator's Determination Regarding Ms. Richter's Copying and Retention of Oracle Documents.*  During the June 29, 2022 hearing on Ms. Richter's sanctions motion, the arbitrator stated, for the first time, that Ms. Richter's copying certain Oracle documents from the Work Computer "may well have been *wrongful*".  Dutta Decl. ¶54 (italics added).  Furthermore, in the ensuing order (which also imposed sanctions of $5,000 on Oracle), the arbitrator made a determination – for the first time in any of his orders – that Ms. Richter's "*copying and retention* of Oracle documents" was "*improper*".  Dutta Decl. **Exh. 16,** at 4, 6-7 (italics added).  The only

OPPOSITION AND OBJECTIONS

plausible basis for that determination was the PIA.

*The Arbitrator's Denial of Request to Stay the Arbitral Proceeding; Oracle's Refusal to Pay Sanctions.*  After she filed her Complaint and her Motion for Preliminary Injunction in this action, Ms. Richter asked the arbitrator to (1) stay the Arbitral Proceeding pending the Court's ruling on her Motion for Preliminary Injunction, and (2) resolve a dispute regarding the manner in which Oracle should pay the earlier ordered sanctions of $5,000.  In response, on Sept. 12, 2022 the arbitrator issued an order (Dutta Decl. **Exh. 20**) which (a) denied Ms. Richter's request to stay the Arbitral Proceeding, and (b) ordered Oracle to pay the sanctions to the client-trust account of Ms. Richter's counsel, upon receiving the necessary tax-reporting document.

The arbitrator's order also stated that no arbitral hearing will be held until this Court has ruled on Ms. Richter's pending Motion for Preliminary Injunction.  Dutta Decl. **Exh. 20,** at 2. During an Oct. 5, 2022 discovery meet-and-confer call, Oracle demanded that Ms. Richter discuss dates on which to reschedule the arbitral hearing.  In response, Ms. Richter's counsel stated that it would be premature to discuss that topic at this juncture.  Discovery is ongoing, and no arbitral hearing will be held until this Court has ruled on Ms. Richter's pending Motion for Preliminary Injunction.

To date, Ms. Richter's counsel has not received Oracle's sanctions payment, even though his office has provided the necessary tax-reporting document (IRS Form W-9) to Oracle counsel.

### III.    Legal Analysis

A.  Ms. Richter Has a Contractual Right to Bring Her Arbitral Claims to This Court

Oracle's Motion to Dismiss and Motion to Compel Arbitration must both be denied, for the PIA grants Ms. Richter the right to transfer all of her pending arbitral claims to this Court.  As California courts have noted, actions and proceedings involving a company's proprietary information are often *exempted* from arbitration – because such lawsuits are "typically brought by *employers*".  *Samaniego v. Empire Today LLC*, 205 Cal.App.4th 1138, 1147 (Cal.Ct.App. 2012) (italics added); *accord*, *Davis v. Kozak*, 53 Cal.App.5th 897, 916 (Cal.Ct.App. 2020).  Indeed, as legal commentators have noted, "even in situations where parties routinely refer matters to

OPPOSITION AND OBJECTIONS

arbitration … they nevertheless continue to *prefer courts* as a mechanism for *protecting information*, innovation, reputation, and property." Drahozal & O'Hara O'Connor, *Unbundling Procedure:  Carve-Outs from Arbitration Clause*, 66 Fla. L.R. 1945, 1983 (2014) (italics added).

Here, Paragraph 12 of the PIA (Complaint **Exh. A**) states that if "any legal action or proceeding involving Oracle … is ***in any way connected*** with this agreement", then a lawsuit "may be instituted in" – and Ms. Richter "agree[s] to submit to the jurisdiction of, and agree[s] that venue is proper in *federal court* in San Francisco or San Jose, California or state court in San Mateo County or Santa Clara County, California." (italics and bolding added).

Mutuality is required under California law.  *E.g.*, *Kozak*, 53 Cal.App.5th at 915; *Roman v. Superior Court*, 172 Cal.App.4th 1462, 1466 (Cal.Ct.App. 2009); *Serafin v. Balco Properties, Ltd., LLC*, 235 Cal.App.4th 165, 176-77 (Cal.Ct.App. 2015); *Cruise v. Kroger Co.*, 233 Cal.App.4th 390, 398 (Cal.Ct.App. 2015).  Thus, once a proceeding becomes "in any way connected" with the PIA, *both* Oracle and Ms. Richter have the right to transfer all arbitral claims and defenses to this Court pursuant to the PIA.

Contrary to Oracle's claim, the scope of the phrase "in any way connected with" is broad. For example, under California indemnity law, if an agreement requires a party (the "First Party") to indemnify another party (the "Second Party") for a loss that is "in any way connected with" the First Party's acts or omissions, the First Party must indemnify the Second Party – even if there is *no showing* that the First Party was *at fault* or that its conduct was a *substantial or predominating cause* of the loss.  *Continental Heller Corp. v. Amtech Mechanical Svcs., Inc.*, 53 Cal.App.4th 500, 503 (Cal.Ct.App. 1997).

Put another way, the phrase "in any way connected with" means what it says.  Even if a proceeding only has a "non-substantial" link or nexus to the PIA, it will still fall under the phrase's broad scope – and give Ms. Richter the right to transfer her arbitral claims to this Court. *See id.* at 503.

Here, Oracle claimed, *inter alia*, that Ms. Richter had violated the PIA by copying files from her Oracle laptop computer to her personal MacBook.  Dutta Decl. **Exh. 14,** at 3:1-3:4

OPPOSITION AND OBJECTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(italics added).  In response, the arbitrator stated, for the first time, that Ms. Richter's copying certain Oracle documents from the Work Computer "may well have been *wrongful*".  Dutta Decl. ¶54 (italics added).  Furthermore, in an order issued the next day (June 30, 2022), the arbitrator made a determination – for the first time in any of his orders – that Ms. Richter's "*copying and retention* of Oracle documents" was "*improper*".  Dutta Decl. **Exh. 16**, at 4 (italics added).  There can be no doubt that the underlying JAMS arbitral proceeding (the "Arbitral Proceeding") "involv[es]" Oracle and is now "connected" with the PIA.

Because the Arbitral Proceeding is unquestionably "connected" with the PIA, Ms. Richter now has the contractual right to transfer, to this Court, all pending claims and issues in the Arbitral Proceeding.  Pursuant to that contractual right and Ninth Circuit precedent, Ms. Richter may bring Ms. Richter's action for (a) employment-related claims, and (b) declaratory judgment as to a substantial controversy between the parties:  whether the PIA gives Ms. Richter the right to transfer all of her arbitral claims to this Court.  *GEICO v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("[W]hen *other claims are joined* with an action for declaratory relief … the district court *should not*, as a general rule, remand or *decline to entertain the claim for declaratory relief*.") (italics added, citation omitted); *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (citation omitted).  *See also NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1018 (2nd Cir. 2014) (in an action for declaratory judgment, a plaintiff may "seek[] a ruling establishing plaintiff's nonliability on the defendant's claim (for *arbitration*)[.]") (italics added).

B. This Court Has the Authority to Enjoin the Arbitral Proceeding

Contrary to Oracle's claim, this Court has the authority to enjoin the Arbitral Proceeding. As the Second Circuit has explained, federal courts are "not powerless to prevent one party from foisting upon the other an arbitration process to which the first party had *no contractual right*." *In re American Express Fin. Advisors Sec. Litig.,* 672 F.3d 113, 141 (2nd Cir. 2011) (italics added) (*quoted by Morgan Stanley & Co., LLC v. Couch*, 134 F.Supp.3d 1215, 1234 (E.D. Cal. 2015)). In the Second Circuit's words, "[i]t makes little sense to us to conclude that district courts lack the authority to order the cessation of an arbitration by parties within its jurisdiction where such

OPPOSITION AND OBJECTIONS

authority appears necessary in order for a court to *enforce the terms of the parties' own agreement*." *American Express,* 672 F.3d at 141 (italics added).

Citing the Second Circuit and other federal courts, the Eastern District of California "conclude[d] it has the authority to enjoin arbitration proceedings where there is *no valid, enforceable arbitration agreement* between the parties." *Morgan Stanley*, 134 F.Supp.3d at 1233-34 (italics added), *aff'd*, *Morgan Stanley & Co. v. Couch*, 659 F. App'x 402, 406 (9th Cir. 2016). Indeed, as that court reasoned, a district court must necessarily have the power to enjoin an arbitration – because it would otherwise lack the power to *enforce* any order banning a matter from being arbitrated:

> An order finding that a party does not have the right to demand that the opposing party participate in arbitration … effectively would be *unenforceable* if the court could not enjoin arbitration proceedings that proceed in *direct defiance* of that order. [*Morgan Stanley*, 134 F.Supp.3d at 1233-34 (italics added).]

In so holding, the Eastern District noted that "a number of district courts within this Circuit have enjoined arbitration seemingly without any challenge or question as to whether federal courts have the authority to do so." *Id.* at 1233 (providing list of cases where district courts in this Circuit have enjoined arbitral proceedings).

Accordingly, because Ms. Richter is contractually entitled to transfer all pending arbitral claims to this Court, this Court has the authority to enjoin the Arbitral Proceeding.

C. The PIA Supersedes the Arbitration Agreement

Oracle also claims that the PIA cannot supersede the arbitration clause of the Arbitration Agreement. However, it is unrefuted that an otherwise valid arbitration clause may be superseded by a subsequent agreement that reflects a "desire to forego arbitration *either expressly or by clear implication*." *Cesca Therapeutics Inc. v. Syngen, Inc.*, No. 2:14-02085-GEB-KJN, 2015 U.S. Dist. Lexis 137816, at *9 (E.D. Cal. Oct. 8, 2015) (italics added) (*quoting Thelen Reid Brown Raysman & Steiner LLP v. Marland*, 319 Fed.Appx. 676, 678-79 (9th Cir. 2009)). To determine whether there is a valid arbitration agreement, a court "should apply ordinary state-law principles

OPPOSITION AND OBJECTIONS

that govern the *formation* of contracts."  *Cesca*, 2015 U.S. Dist. Lexis 137816, at \*7 (*quoting Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 924 (9th Cir. 2011)).

Here, the PIA was executed after the Arbitration Agreement and expressly "survive[d]" Ms. Richter's employment at Oracle.  Complaint **Exh. A** ¶14 (italics added).  Furthermore, Paragraph 12 of the PIA expressly grants either Party the *right* to transfer, to this Court, *any* "legal action or proceeding" if two related contingencies arise:  (1) an action or proceeding is or becomes "in any way connected with" the PIA; and (2) either the employer or employee seeks to litigate that action or proceeding in a court of law.

To that end, Ms. Richter – and Oracle, under California law's requirement of mutuality – expressly "agree[d] to submit to the *jurisdiction* of, and agree[s] that venue is proper in *federal court* in San Francisco or San Jose, California or state court in San Mateo County or Santa Clara County, California." Complaint **Exh. A** ¶12 (italics added); *Kozak*, 53 Cal.App.5th at 915; *Roman*, 172 Cal.App.4th at 1466; *Serafin*, 235 Cal.App.4th at 176-77; *Cruise*, 233 Cal.App.4th at 398.

Thus, it is beyond question that (1) the Arbitral Proceeding is "connected" to the PIA; (2) the Parties *expressly agreed* to submit to the jurisdiction of this Court, with respect to "any legal action or proceeding … in any way connected" to the PIA; and (3) Ms. Richter seeks to litigate the Arbitral Proceeding in this Court.  Against such a backdrop, there can be no doubt that Paragraph 12 of the PIA reflected the Parties' "desire to forego arbitration" by "clear implication" – and granted Ms. Richter (and Oracle) the right to transfer the Arbitral Proceeding to this Court. *See Cesca*, 2015 U.S. Dist. Lexis 137816, at \*9.

D.  <u>Ms. Richter Unquestionably Has the Right to Transfer All Arbitral Claims to this Court, as Shown by the Law on Arbitral "Carveout" Clauses</u>

Contrary to Oracle's claim, Ms. Richter unquestionably has the right to transfer the entirety of her arbitral claims to this Court, as shown by the law on arbitral "carveout" clauses. "[P]arties that agree to arbitration clauses *commonly exclude* (or *carve out*) certain claims or remedies from their arbitration clause[.]"  Drahozal & O'Hara O'Connor, 66 Fla. L.R. at 1949-50 (italics added).  Here, the Proprietary Information Agreement (PIA) – which superseded the

OPPOSITION AND OBJECTIONS

1

2

Arbitration Agreement – serves as the functional equivalent of an arbitral carveout clause.

Against such a backdrop, it is not uncommon for carveout clauses to give arbitral parties the right to litigate their claims in a court of law.  *E.g., Archer and White Sales, Inc. v. Henry Schein*, 935 F.3d 274, 283 (5ᵗʰ Cir. 2019) (arbitral carveout clause granted plaintiff the right to litigate all claims in federal court), *cert. dismissed as improvidently granted*, -- U.S. --, 141 S.Ct. 656 (2021); *Coscarelli*, 364 F.Supp.3d at 216-17 (arbitral carveout clause granted plaintiff the right to litigate certain claims in federal court); *Cisco Systems, Inc. v. Chung*, 462 F.Supp.3d 1024, 1039 (N.D. Cal. 2020) (Hamilton, C.J.) (same).

What is more, as the Southern District of New York has held, a federal court may exercise jurisdiction over an action pursuant to a carveout clause even if the action *has already been litigated in state court*:

> This Court has jurisdiction to adjudicate Plaintiffs' claims under 28 U.S.C. §1331 and 28 U.S.C. §1367.  The fact that [plaintiff] sought review of the arbitrator's judgment and award in New York Supreme Court *does not change that*.  [*Coscarelli v. ESquared Hospitality LLC*, 364 F.Supp.3d 207, 217 (S.D.N.Y. 2019) (italics added)].

Recently, in *Archer and White Sales, Inc. v. Henry Schein*, the Fifth Circuit squarely held that an *entire* action was exempt from arbitration, where the carveout clause had excluded from arbitration "*actions* seeking injunctive relief":

> Any dispute arising under or related to this Agreement (except for **actions** seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property…), shall be resolved by binding arbitration *in accordance with the arbitration rules of the American Arbitration Association*.  [*Archer*, 935 F.3d at 283 (italics in original, underlining and bolding added).]

In response, the Fifth Circuit held that (1) it had the authority to decide whether or not the dispute at issue was arbitrable, because the agreement at issue did not "evince[] a *clear and unmistakable* intent to delegate arbitrability"; and (2) the entirety of the action (which sought *both* injunctive relief *and* damages) was not subject to mandatory arbitration.  *Id.* at 281-83, 277 (internal quotation marks omitted, italics added).  To that end, the Fifth Circuit pointedly noted

OPPOSITION AND OBJECTIONS

that the "placement" of the carveout clause was "dispositive":

> [T]he placement of the carve-out here is dispositive.  We cannot re-write the words
> of the contract.  The most natural reading of the arbitration clause at issue here
> states that any dispute, except actions seeking injunctive relief, shall be resolved in
> arbitration in accordance with AAA rules.  The plain language incorporates the
> AAA rules – and therefore delegates arbitrability – for all disputes *except* those
> under the carveout.  Given that carve-out, we cannot say that the Dealer
> Agreement evinces a 'clear and unmistakable' intent to delegate arbitrability.

*Id.* at 281-82 (italics in original, underlining added); *accord*, *NASDAQ*, 770 F.3d at 1031 (court must decide issues of arbitrability where there is ambiguity as to whether the parties intended to have such issues decided by an arbitrator).

Significantly, as the Fifth Circuit held, the broad scope of the arbitral carveout exempted the *entire* action from arbitration.  As *Archer* pointedly noted, the plain language of the carveout was *not* limited to "actions seeking *only* injunctive relief, "actions for injunction in aid of an arbitrator's award," or "*claims* for injunctive relief."  *Archer*, 935 F.3d at 283 (italics in original). For this reason, the Fifth Circuit flatly rejected the defendants' argument that its "reading [of the carveout clause] would lead to *absurd results*, where one party could *unilaterally evade* the agreement to arbitrate with an attenuated request for injunctive relief."  *Id.* at 283 (italics added). For the Fifth Circuit, it sufficed, for purposes of construing the scope of the carveout clause, that the federal lawsuit brought by the plaintiff was "indeed an 'action seeking injunctive relief.'"  *Id.* at 284.

In the same vein, in *Cisco Systems, Inc. v. Chung*, this Court held that a carveout clause in an arbitration agreement exempted, from arbitration, requests for injunctive relief involving intellectual property.  *Cisco,* 462 F.Supp.3d at 1039.  There, this Court construed the following, standalone carveout clause that was "contained in a separate paragraph directly below the general arbitration provision":

> We understand and agree that nothing in this Agreement shall prevent either party

OPPOSITION AND OBJECTIONS

from seeking from a court the remedy of an injunction for a claimed

misappropriation of a trade secret, patent right, copyright, trademark, or any other

intellectual or confidential property.  [*Id.* at 1037 (italics added)].

In light of that standalone carveout clause, this Court held that the arbitration agreement exempted all claims for "intellectual property injunctive relief" – and thereby gave the plaintiff the "*option* to have such claims adjudicated in this [C]ourt[.]"  *Cisco*, 462 F.Supp.3d. at 1039 (italics in original).  Namely, for such claims, "either party may (general arbitration agreement) but *need not* (intellectual property *injunctive relief carveout*) pursue such claims in arbitration."  *Id.* at 1039 (italics added).

Here, Ms. Richter has the express right under the standalone PIA – a separate document which *superseded and does not reference* the Arbitration Agreement – to bring all claims from the Arbitral Proceeding to this Court, provided that the Arbitral Proceeding is "in any way connected with" the PIA.  Complaint **Exh. A** ¶12.  Moreover, as we have shown (*see* Section III(C) above), the Parties expressly "agree[d] to submit to the jurisdiction of" this Court – and *not* to the jurisdiction of any arbitrator – with respect to "any legal action or proceeding … in any way connected" to the PIA.  Complaint **Exh. A** ¶12.  In this light, the Arbitral Proceeding is now "connected" with the PIA, and the PIA does *not* "evince" a "clear and unmistakable" intent to delegate arbitrability to the arbitrator.  Therefore, Ms. Richter unquestionably has the right to transfer the *entirety* of her pending arbitral claims to this Court, pursuant to *Archer*, *Cisco*, and *Coscarelli*.

E.  The *Rooker-Feldman* Doctrine Does Not Bar This Court from Exercising Subject-Matter Jurisdiction

Contrary to Oracle's claim, the *Rooker-Feldman* Doctrine does not bar this Court from exercising subject-matter jurisdiction over Ms. Richter's claims.  "The *Rooker-Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments."  *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005) (citation and internal quotation marks omitted).  The *Rooker-Feldman* Doctrine

OPPOSITION AND OBJECTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"applies only in *limited circumstances*, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court."  *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (italics added).

As the Supreme Court has admonished, *Rooker-Feldman* applies only to cases brought by parties who (1) have received an unfavorable decision in state court, and (2) are "*complaining of injuries **caused by** state-court judgments* rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (italics and bolding added); *see also Miles v. Coleman*, No. 15-cv-3696 (WMW/FLN), 2017 U.S. Dist. Lexis 103745, at *9-*10 (D. Minn. July 5, 2017) (claims not barred under *Rooker-Feldman* because, *inter alia*, the plaintiff did not complain of injuries caused by the relevant state-court judgment).  *Cf. Parker Law Firm v. Travelers Indem. Co.*, 985 F.3d 579, 583 (8th Cir. 2021) (*Rooker-Feldman* held to apply where the plaintiffs "challenged the state court's decision directing the parties to *arbitration*, and … *claim[ed] to have been aggrieved by an adverse decision* on that challenge.") (italics added).

Here, Ms. Richter's Complaint does not seek any damages in connection with the state-court order (a) granting Oracle's motion to compel arbitration (Dutta Decl. **Exh. 8**), or (b) denying Ms. Richter's application for a temporary restraining order (Dutta Decl. **Exh. 11**) (which, as shown in Section III(F) below, does not reflect on the merits of the underlying dispute).  Instead, the Complaint seeks (1) equitable relief based, *inter alia*, on Ms. Richter's contractual right to transfer all pending arbitral claims to this Court, and (2) redress for Oracle's wrongdoing in connection with her prior employment at Oracle.  Because Ms. Richter does not "complain[] of injuries caused by [a] state-court judgment[]", *Rooker-Feldman* does not apply.  *See Exxon*, 544 U.S. at 284.  Therefore, this Court may exercise subject-matter jurisdiction over Ms. Richter's claims.

F.   The Full Faith and Credit Statute Does Not Bar This Court from Staying the Arbitral Proceeding

Contrary to Oracle's claim, the Full Faith and Credit Statute does not bar this Court from

OPPOSITION AND OBJECTIONS

staying the Arbitral Proceeding.  Specifically, Oracle claims that the Full Faith and Credit Statute (28 U.S.C. §1738) requires this Court to recognize the "preclusive" effects of two state-court orders: (1) the Oct. 4, 2021 order (Dutta Decl. **Exh. 11**) denying Ms. Richter's application for a temporary restraining order (TRO), and (2) the May 3, 2019 order (Dutta Decl. **Exh. 8**) granting Oracle's motion to compel arbitration.

To begin with, the state-court's denial of Ms. Richter's TRO application does not have any preclusive effect.  *Res judicata* (claim preclusion) bars lawsuits on "any claims that were raised or could have been raised" in a prior action.  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citation omitted).  To determine whether a state-court judgment bars a lawsuit, a federal court must apply the *res judicata* law of the state in which the prior judgment was entered.  *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984).

Under California law, a ruling on a TRO application "does *not* reflect on the *merits* of the underlying dispute", for "the procedure for obtaining a TRO [is not] akin to an adjudication of a disputed claim."  *Thomas v. Quintero*, 126 Cal.App.4th 635, 652, 664 n.21 (Cal.Ct.App. 2005) (italics added); *see also Adler v. Vaicius*, 21 Cal.App.4th 1770, 1775 (Cal.Ct.App. 1993).  Therefore, the state-court's denial of Ms. Richter's TRO application has no preclusive effect on this federal action.

Furthermore, the State Court's order granting Oracle's motion to compel does not have any preclusive effect – because under California law, collateral estoppel (issue preclusion) does not apply to a state-court arbitration order from which a direct appeal may be taken.  In *Geographical Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1105-06 (9th Cir. 2010), the defendant filed a motion to compel arbitration after a state trial court denied its motion to compel arbitration.  Citing a seminal California case on collateral estoppel (*Abelson*), the Ninth Circuit held that under California law, "a judgment is *not final* for the purposes of collateral estoppel until it is free from the potential of a direct attack, i.e., *no further direct appeal can be taken*."  *Id.* at 1105 n.3 (9th Cir. 2010) (italics added) (*citing Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal.App.4th 776, 787 (Cal.Ct.App. 1994) ("[A]ccording to California law, a judgment is *not final*

OPPOSITION AND OBJECTIONS

for purposes of collateral estoppel while *open to direct attack, e.g., by appeal*.") (italics added)).

Under California law, "[o]rders granting motions to compel arbitration are generally *not immediately appealable*. Such orders are normally subject to review *only on appeal from the final judgment*." *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal.App.4th 1115, 1121-22 (Cal.Ct.App. 2012) (italics added, citations omitted). Therefore, as courts in this Circuit have held, "a decision on a motion to compel arbitration is *not a final judgment* on the merits that gives rise to collateral estoppel." *Lotsoff v. Wells Fargo Bank, N.A.*, No. 3:18-cv-02033-AJB-MDD, 2019 U.S. Dist. Lexis 169373, at *11 (S.D. Cal. Sept. 30, 2019) (italics added) (*quoting Pearson v. P.F. Chang's China Bistro*, No. 13-cv-2009-JLS, 2015 U.S. Dist. Lexis 184157, at *12 n.4 (S.D. Cal. Feb. 23, 2015)). *Cf. Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712 (9th Cir. 1992) (in case predating *Abelson* and *Lhotka*, court held that under California law, collateral estoppel barred a federal court from staying an arbitration, where a state court had denied the plaintiff's motion to stay the arbitration).

Here, no final judgment has been issued by the State Court as to any of Ms. Richter's claims. Indeed, over three years after the Arbitration Proceeding was commenced, the arbitral hearing had to be cancelled <u>twice</u> due to Oracle's repeated concealment of evidence (the State Court's adjudication of Ms. Richter's non-arbitrable PAGA claims has been stayed pending the Arbitral Proceeding). Dutta Decl. ¶¶45-47.

Because a direct appeal from the State Court's order granting of the motion to compel arbitration may be taken at a future time (i.e., after the State Court has issued a final judgment), collateral estoppel does not apply to this case under California law. *Lhotka*, 599 F.3d at 1105 n.3; *Abelson*, 28 Cal.App.4th at 787. Accordingly, the Full Faith and Credit Statute does not bar this Court from staying the Arbitral Proceeding.

G.   The Anti-Injunction Act Does Not Bar This Court from Issuing an Arbitral Stay

In the same vein, the Anti-Injunction Act (28 U.S.C. §2283) does not bar this Court from enjoining the Arbitral Proceeding. Under the All Writs Act, the "Supreme Court and all courts established by Act of Congress may issues all writs necessary or appropriate *in aid of their*

OPPOSITION AND OBJECTIONS

*respective jurisdictions* and agreeable to the usages and principles of law."  28 U.S.C. §1651 (italics added); *see also Ocean Thermal Energy Corp. v. Coe*, No. LACV19-05299-VAP-JPR, 2020 WL 7414745, at *3 (C.D. Cal. Nov. 16, 2020) (Phillips, J.).  In that regard, the Anti-Injunction Act bars a federal court from "enjoining proceedings in a state court unless one of its exceptions applies", including "where necessary in *aid of its jurisdiction*."  *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (italics added) (*quoting* 28 U.S.C. §2283).

The "necessary in aid" exception applies where "injunctive relief is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to *seriously impair the federal court's flexibility and authority* to decide that case.'"  *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987) (italics added) (*quoting Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)).

To invoke the "necessary in aid" exemption, a plaintiff must show that (1) there is a parallel action in state court; and (2) unless enjoined, the state-court action (a) would interfere with the federal court's authority to enforce a settlement agreement or decree subject to its jurisdiction, or (b) could otherwise resolve a significant portion of the claims that had been brought to the federal court.  *Flanagan*, 143 F.3d at 545-46 (settlement agreement); *U.S. v. Alpine Land Reservoir Co.*, 174 F.3d 1007 (9th Cir. 1999) (decree); *Ocean Thermal*, 2020 WL 7414745, at *5 (significant portion of federal claims).

For example, in *Flanagan*, the Ninth Circuit held that the "aid in jurisdiction" exception applied where the defendants had filed a parallel state-court action in "an entirely unjustified attempt … to *evade their own agreement* … to submit disputes and enforcement proceedings regarding their settlement to the federal district court."  *Flanagan*, 143 F.3d at 546 (italics added). In the same vein, in *Ocean Thermal*, the Central District of California explained that for the "aid in jurisdiction" exception to apply, a plaintiff must make a showing that the state-court action would resolve a significant portion of the claims that had been brought to the federal court. *Ocean Thermal*, 2020 WL 7414745, at *5.

Here, Ms. Richter does not seek to enjoin the related state-court action (where Ms.

OPPOSITION AND OBJECTIONS

Richter's non-arbitrable PAGA claims remain).  Instead, pursuant to her contractual rights under the PIA, Ms. Richter (1) has filed a Complaint in which she alleges all of her pending arbitral claims, and (2) seeks to enjoin the Arbitral Proceeding.

To the extent that the Arbitral Proceeding may be considered a state-court proceeding for purposes of the Anti-Injunction Act, the "aid in jurisdiction" exception applies here – because the PIA granted this Court jurisdiction to adjudicate any proceeding that is "in any way connected with" the PIA.  If it is not enjoined – and Oracle is allowed to "evade [its] own agreement" – the Arbitral Proceeding will resolve the *entirety* of the Complaint's non-declaratory claims against Oracle, at an arbitral hearing that may be held as early as the start of winter.  *See Flanagan*, 143 F.3d at 546; *see also Ocean Thermal*, 2020 WL 7414745, at *5.

Because not enjoining the Arbitral Proceeding would "seriously impair [this] [C]ourt's flexibility and authority to decide" the claims raised in this action, there can be no doubt that the "aid in jurisdiction" exception applies here.  *See Belzberg*, 834 F.2d at 740; *Ocean Thermal*, 2020 WL 7414745, at *5.  Accordingly, the Anti-Injunction Act does not bar this Court from enjoining the Arbitral Proceeding.

**IV. Objections**

Finally, Ms. Richter objects to the following, improper evidence proffered by Oracle:

*Improper Incorporation by Reference*.  Throughout its opposition papers (including pp. 2-11, 16, 18 and 21 of its opposition brief and Paragraph 7 of its counsel Lucky Meinz's Sept. 26, 2022 declaration), Oracle incorporates by reference documents (including documents attached a declaration of Ms. Richter's counsel) that were presented as part of a *separate* motion.  Because such presentation of evidence violates Section IV(D) of the Court's Standing Order for Civil Cases, all such references must be stricken from the record.

*Request for Judicial Notice* (Dkt. 24, Sept. 26, 2022).  Oracle's Request for Judicial Notice ("RJN") must be summarily denied, for Oracle's RJN (a) failed to provide a list of the specific documents for which it seeks judicial notice, and (b) failed to authenticate any such documents, in violation of FRE 901 and 902 (*e.g.*, *Amoco Prod. Co. v. United States*, 619 F.2d

OPPOSITION AND OBJECTIONS

1383, 1391 (10th Cir. 1980)).

Moreover, any request for judicial notice must provide the "*purpose* for which [it] was offered."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018) (italics added).  To that end, a court must be apprised as to which *specific* "fact or facts" for which judicial notice is requested.  *Id.* at 999 (italics added).  Moreover, any such evidence must be relevant and not inflict the opposing party with undue prejudice.  *E.g.*, *Cuellar v. Joyce*, 596 F.3d 505, 512 (9th Cir. 2010) (denying judicial notice because proffered materials were not relevant); *Keyes v. Coley*, No. 09-1297, 2011 U.S. Dist. LEXIS 59625, at *8-*9 (E.D. Cal. June 2, 2011) (denying judicial notice on the ground that the proffered evidence was irrelevant, unduly prejudicial, and hearsay).

There is no foundation for Oracle's RJN, for Oracle failed to authenticate any of the documents attached to its RJN.  Furthermore, Oracle failed to provide (1) a list of the documents for which judicial notice is sought, (2) the purpose for which the documents are offered, or (3) the specific fact or facts for which judicial notice is requested.  As a result, the entire RJN must be summarily denied.

*Declaration of Lucky Meinz* (Dkt. 23-1, Sept. 26, 2022).  Ms. Richter objects to the following parts of the Meinz Declaration:

- **Paragraph 8** proffers misleading, prejudicial content, for it falsely claims that Ms. Richter had made a "representation" in discovery that "she had produced all responsive documents" in response to Request for Production of Documents ("RPD") Item 2 (Set 1).  In so doing, Paragraph 10 deliberately omits a critical fact:  Ms. Richter had objected to RPD Item 2 on several grounds, including overbreadth.  Dutta Decl. ¶13 & **Exh. 1.**  In fact, Oracle *did not contest* Ms. Richter's objections to RPD Item 2 within the statutory, 45-day period.  Dutta Decl. ¶25; CCP §2031.310(c).  Nevertheless, nearly one year later, the arbitrator's Impoundment Order overruled Ms. Richter's overbreadth objections to Item 2.  Dutta Decl. **Exh. 10,** at 2.

- **Paragraph 16** proffers misleading, prejudicial, and irrelevant content.  This paragraph

OPPOSITION AND OBJECTIONS

falsely claims that Ms. Richter has refused to provide certain documents.  In fact,

those documents are subject to an ongoing privilege preview in the Arbitral

Proceeding.  Dutta Decl. ¶36.

- **Exhibits A** and **B** proffer misleading, prejudicial content, for they constitute

  cherrypicked portions from Ms. Richter's deposition transcripts.

Accordingly, the entirety of the foregoing, improper evidence – and any part of Oracle's

papers relying on that evidence – must be disregarded.

**V.    Conclusion**

*[W]hen the language of a contract is clear and unambiguous, effect **must be given to its***

***terms,** and the court, under the guise of construction, cannot reject what the parties inserted or*

*insert what the parties elected to omit*."

-- *Archer*, 935 F.3d at 283 (emphasis added, citations and internal quotations omitted)


Simply put, Oracle's own PIA (which Oracle required Ms. Richter to sign as a condition

of employment) expressly grants her the *right* to transfer all pending arbitral claims and issues to

this Court.  Accordingly, the Court must deny Oracle's Motion – and thereby vindicate Ms.

Richter's right to seek redress for Oracle's wrongdoing in this Court.

DATED:  Oct. 17, 2022


BUSINESS, ENERGY, AND ELECTION

LAW, PC



By:  /s/ Gautam Dutta

GAUTAM DUTTA, ESQ.

Attorneys for Plaintiff

HAONING RICHTER

OPPOSITION AND OBJECTIONS