**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| HAONING RICHTER,<br><br>                    Plaintiff,<br><br>     v.<br><br>ORACLE AMERICA, INC.,<br><br>                    Defendant. | Case No.  22-cv-04795-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Re:  ECF No. 23] |

Plaintiff Haoning Richter filed suit in state court against her previous employer, Defendant Oracle America, Inc. ("Oracle"), following her termination.  The case was compelled to arbitration.  Plaintiff filed in state court to stay the arbitration pending appeal.  She was unsuccessful.  Plaintiff sought review of the order compelling arbitration, again in state court.  She was again unsuccessful.  After several discovery disputes in the arbitral proceeding, Plaintiff filed an ex parte application in state court to enjoin the arbitral proceeding.  Yet again, Plaintiff was unsuccessful.  Having failed to obtain her desired results in state court, Plaintiff filed the instant action in federal court.

Now before the Court is Oracle's motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* ECF No. 23 ("MTD"); *see also* ECF No. 27 ("Reply").  Richter opposes the motion.  ECF No. 26 ("Opp.").  For the following reasons, Oracle's motion to dismiss is GRANTED.

**I.     BACKGROUND**

Plaintiff filed suit against Oracle on October 29, 2018 in Santa Clara County Superior Court.  ECF No. 1 ("Compl.") ¶ 147.  The state court determined that Richter was bound by an arbitration agreement and, on May 3, 2019, it transferred all claims except those brought under the

Private Attorney General Act to a JAMS arbitral proceeding. *Id.* ¶¶ 148-150, Ex. C ("Arbitration Agreement); *see* ECF No. 24 ("RJN") Ex. C (May 2019 state court order). Plaintiff's petitions for review of the superior court order were denied by the Court of Appeal and California Supreme Court. RJN Exs. D, E.

The Arbitration Agreement states, in relevant part:

> Mutual Agreement to Arbitrate
>
> You and Oracle understand and agree that any existing or future dispute or claim arising out of or related to your Oracle employment, or the termination of that employment, will be resolved by final and binding arbitration and that no other forum for dispute resolution will be available to either party, except as to those claims identified below. The decision of the arbitrator shall be final and binding on both you and Oracle and it shall be enforceable by any court having proper jurisdiction.
> . . .
> The arbitrator will have all the powers a judge would have in dealing with any question or dispute that may arise before, during and after the arbitration.

*See* Compl. Ex. C. Also relevant to this matter is a Proprietary Information Agreement ("PIA") that Richter and Oracle signed as part of her employment. *See* Compl. Ex. A. The PIA provides that "any legal action or proceeding involving Oracle which is in any way connected with this agreement may be instituted in federal court in San Francisco or San Jose, California or state court in San Mateo County or Santa Clara County, California." Compl. Ex. A ¶ 12.

On November 3, 2020, Oracle propounded its first set of Requests for Production of Documents ("RFP"), including RFP No. 2, which sought:

> Any and all DOCUMENTS that YOU retained or kept in YOUR possession from YOUR employment at ORACLE . . . .

Compl. ¶ 158. On December 15, 2020, Richter responded to the RFP. *Id.* ¶ 159.

During her September 17, 2021 deposition, Richter stated that after learning her employment would be terminated, she had kept Oracle-related documents on her personal computer. Compl. ¶ 163. On a September 20, 2021 conference call with the parties and the arbitrator, Oracle stated that Richter had violated the PIA and may have, as a result, violated federal law. *Id.* ¶ 165. Based on the deposition, on September 21, 2021, Oracle brought a motion for forensic examination of Richter's personal laptop. *Id.* ¶ 167. Oracle asserted that Richter had

2

1   violated the PIA. *Id.* ¶ 167. The arbitrator set a hearing on September 29, 2021. *Id.* ¶ 169. The
2   arbitrator granted the request on September 30, 2021. *Id.* ¶ 174.

3   Also on September 29, 2021, Richter filed an ex parte application in Santa Clara County
4   Superior Court for a temporary restraining order ("TRO") to enjoin the impoundment of her
5   personal computer and to enjoin the arbitral proceeding. Compl. ¶ 173. In her ex parte
6   application, Plaintiff argued she would likely prevail on her claim that she was contractually
7   entitled to litigate all her claims pending in the JAMS proceeding in the Santa Clara Superior
8   Court on the basis that the PIA permitted her to submit all of her claims in court and that the
9   balance of equities heavily favored her because she would be "compelled to participate in a futile
10  arbitration" and that any forensic examination ordered by the Arbitrator would invade her privacy.
11  *See* RJN Ex. F. Oracle opposed the application. *See id.* Ex. G. The court denied this application
12  on October 4, 2021. Compl. ¶ 177; *see* RJN Ex. H (October 2021 state court order).

13  In the arbitration proceeding, on October 7, 2021, Oracle disclosed that it had possession
14  of Richter's work computer. Compl. ¶ 180. Given various discovery issues, the arbitrator vacated
15  the October 2021 hearing dates. *Id.* ¶ 184. Plaintiff filed a motion for sanctions against Oracle on
16  the basis of documents she discovered on the work computer that allegedly were not handed over
17  in discovery. *Id.* ¶¶ 185-186. In opposition, Oracle asserted that Richter had unclean hands, as
18  her actions in withholding her personal computer had violated the PIA. *Id.* ¶¶ 187-188. In Reply,
19  Richter asserted that she had the legal right under the PIA to litigate PIA-related issues in a
20  judicial forum. *Id.* ¶ 190. The arbitrator issued an order on June 30, 2022 stating, among other
21  things, that Richter's "copying and retention of Oracle documents" was "improper." *Id.* ¶ 192.

22  On August 22, 2022, Plaintiff filed her Complaint in this case in federal court. *See* Compl.
23  The Complaint has eight causes of action. *See generally id.* The first cause of action is for
24  declaratory relief seeking "a judicial declaration that [Richter] has the contractual right to litigate,
25  in this Court, (a) the legal issue of whether or not she can be held liable under the PIA, and (b) all
26  of her pending legal claims in the Arbitral Proceeding. *Id.* ¶¶ 193-195. The remaining causes of
27  action are all identical to causes of action brought by Plaintiff in her state court action. *See*
28  Compl. ¶¶ 196-235; RJN Ex. A (state court complaint).

3

1   On September 26, 2022, Oracle filed the instant motion to dismiss. *See* MTD.

2   **II.   REQUEST FOR JUDICIAL NOTICE**

Oracle filed a Request for Judicial Notice in support of its Opposition to the motion for preliminary injunction. ECF No. 24 ("RJN"). Defendant seeks judicial notice of ten exhibits, all of which are documents from the state court and arbitration proceedings between these parties. RJN at 1; *see Haoning Richter v. Oracle America, Inc., et al.*, Case No. 18-cv-337194 (Santa Clara Superior Court). Plaintiff opposes the request. *See* Opp. at 28-29.

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). A court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Rulings in an arbitration are also proper subjects of judicial notice. *See Rachford v. Air Line Pilots Ass'n, Int'l*, 284 F. App'x 473, 475 (9th Cir. 2008).

Richter opposes the request on the basis that Oracle failed to authenticate the documents, provide a list of the documents, or identify the purpose for which the documents are offered or the facts for which judicial notice is requested. Opp. at 28-29. The authenticity of the documents is not in dispute. Further, Richter refers to many of these documents in her Complaint and briefing on the motion, and she has filed several of the same documents as exhibits to a declaration from her attorney, submitted in conjunction with her opposition to this motion. *See* ECF No. 26-1.

Defendant requests judicial notice of filings and orders in proceedings involving the parties in state court and arbitration, which are properly subject to judicial notice. *See* RJN. The Court GRANTS Defendant's Request for Judicial Notice.

**III.   LEGAL STANDARD**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts

4

as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## IV.  EVIDENTIARY OBJECTIONS

Both sides state "evidentiary objections." Richter objects to several portions of a declaration submitted by Oracle's counsel, Lucky Meinz, in support of Oracle's motion to dismiss. Opp. at 29-30 (citing ECF No. 23-1). She also argues that Oracle improperly incorporates by reference documents that were filed in association with the motion for a preliminary injunction, as opposed to the motion to dismiss, and requests that such references be stricken. *Id.* at 28. Oracle objects, on various bases, to the declarations of Richter and her counsel, Gautam Dutta, that were filed in association with the opposition to the motion to dismiss. Reply at 13-14. Oracle also argues that Richter improperly fails to provide citations for many of the factual contentions in her opposition brief. *Id.* at 13.

As stated above, on a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). The Court therefore declines to consider all declarations submitted in association with this motion or any other motion in deciding the instant motion. *See* ECF Nos. 23-1, 26-1, 26-2.

## V. ANALYSIS

### A. Declaratory Relief as to the Ability to Litigate Potential Future PIA Claims

In her first cause of action for declaratory relief, Richter asks the Court for a judicial declaration that Richter has the contractual right to litigate the legal issue of whether she can be held liable under the PIA. Compl. ¶¶ 193-195. Oracle argues that the Court does not have subject matter jurisdiction over this claim because there is no actual controversy. MTD at 9-12. Richter does not argue otherwise. *See* Opp. While the Court may thus presume Richter has conceded this claim, it will address its jurisdiction regardless.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). "Article III of the Constitution limits the jurisdiction of federal courts to consideration of actual cases and controversies, and federal courts are not permitted to render advisory opinions." *W. Linn Corp. Park L.L.C. v. City of W. Linn*, 534 F.3d 1091, 1099 (9th Cir. 2008). "When presented with a claim for a declaratory judgment, therefore, federal courts must take care to ensure the presence of an actual case or controversy." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9 Cir. 2007).

Oracle argues that the Court lacks subject matter jurisdiction because there is no current case or controversy as to whether Plaintiff has violated the PIA or any other issue pertaining to the PIA. MTD at 10. The Court agrees. There are several employment claims against Oracle in the motion to dismiss. And the PIA has come up in the context of discovery disputes. But there is currently no action seeking to hold Richter liable for violation of the PIA. Therefore, any decision by the Court as to Richter's ability to litigate the legal issue of whether she can be held liable under the PIA would be an improper advisory opinion. This determination is in accordance with "several courts [that] have concluded that a declaratory judgment action concerning the arbitrability of a future, hypothetical conflict is nonjusticiable." *Weyerhaeuser Co. v. Novae Syndicate 2007*, No. C18-0585JLR, 2019 WL 3287893, at *2 (W.D. Wash. July 22, 2019)

6

(collecting cases); *see also, e.g.*, *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648, 652 (6th Cir. 2005) (holding that "attempting to take preemptive action by filing a lawsuit to settle the arbitration question in advance . . . is precluded by the Case and Controversy requirement of the United States Constitution").

The Court therefore DISMISSES Richter's first cause of action as to a judicial declaration that Richter has the contractual right to litigate the legal issue of whether she can be held liable under the PIA.

### B. Declaratory Relief as to Ability to Litigate Current Claims

In her first cause of action for declaratory relief, Richter also asks the Court for a judicial declaration that she can litigate all of her pending legal claims in the arbitral proceeding. Compl. ¶¶ 193-195. Oracle makes several arguments as to why the Court should dismiss this claim, which the Court will address in turn.

#### 1. *Rooker-Feldman*

The Court must address whether it has subject matter jurisdiction over this claim. As stated above, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Oracle argues that the Court does not have subject matter jurisdiction under the *Rooker-Feldman* doctrine. MTD at 7-9.

"Under the *Rooker-Feldman* doctrine, 'a state-court decision is not reviewable by lower federal courts.'" *Hooper v. Brnovich*, No. 22-16764, 2022 WL 16947727, at *3 (9th Cir. Nov. 15 2022) (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)). And the doctrine bars jurisdiction "not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015) (quoting *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012)). In determining whether an action is a de facto appeal, a court must "pay close attention to the *relief* sought by the federal-court plaintiff." *Cooper*, 704

7

1    F.3d at 777-78 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)).  A case is a de
2    facto appeal "when the plaintiff in federal district court complains of a legal wrong allegedly
3    committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341
4    F.3d 1148, 1163 (9th Cir. 2003).  "If claims raised in the federal court action are 'inextricably
5    intertwined' with the state court's decision such that the adjudication of the federal claims would
6    undercut the state ruling . . . , then the federal complaint must be dismissed for lack of subject
7    matter jurisdiction." *Bianchi*, 334 F.3d at 898.  The doctrine "does not preclude a plaintiff from
8    bringing an 'independent claim' that, though similar or even identical to issues aired in state court,
9    was not the subject of a previous judgment by the state court." *Hooper*, 2022 WL 16947727, at *3
10   (quoting *Cooper*, 704 F.3d at 778).

11   Plaintiff seeks a declaratory judgment that her claims should be litigated under the PIA.
12   *See* Compl. ¶¶ 193-195.  Two state court orders are implicated by this claim: (1) the May 2019
13   state court order compelling arbitration, *see* RJN Ex. C; and (2) the October 2021 state court order
14   denying to enjoin the arbitral proceedings, *see* RJN Ex. H.  In her ex parte application, Plaintiff
15   argued that, under the PIA, she is entitled to litigate the claims currently in arbitration—the same
16   proposition for which she is seeking a judicial declaration.  *See* RJN Ex. F.  The Court thus finds
17   that Richter's claim for declaratory relief as to her ability to litigate these claims in court is a de
18   facto appeal of the state court's October 2021 order.  Plaintiff is here seeking to move her claims
19   from arbitration to litigation on the basis of the PIA—exactly what she was seeking from the state
20   court, and on the same basis.  This claim is "inextricably intertwined" with the ex parte application
21   brought in state court.  *See Bianchi*, 334 F.3d at 898.

22   Richter argues that the *Rooker-Feldman* doctrine does not apply here because she does not
23   assert that the state court order caused her to suffer any injuries. Opp. at 23-24.  She also argues
24   that the *Rooker-Feldman* doctrine does not apply because she does not seek any damages *Id.* at
25   24.  Richter points to language from a Supreme Court decision stating that the *Rooker-Feldman*
26   doctrine applies only to "cases brought by state-court losers complaining of injuries caused by
27   state-court judgments rendered before the district court proceedings commenced and inviting
28   district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* does not apply when an injury "was not caused by the state court," but instead the state court "failed to rectify" an injury. *Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007) (quoting *Noel v. Hall*, 341 F.3d 1148, 1165 (9th Cir. 2003)). The Court finds that the state court's October 2021 order did not *cause* Richter any injuries; it instead simply maintained the status quo, failing to rectify an earlier injury: being compelled to arbitration. *Cf. KIPP Acad. Charter Sch. v. United Fed'n of Tchrs., AFT NYSUT, AFL-CIO*, 723 F. App'x 26 (2d Cir. 2018) (holding *Rooker-Feldman* did not apply because court order denying a stay of already-occurring arbitration did not cause a new injury, but instead ratified an injury caused by defendant). The *Rooker-Feldman* doctrine therefore does not apply.

### 2. Preclusion

Oracle argues that even if the declaratory relief claim is not barred by *Rooker-Feldman*, it is barred by the related doctrine of preclusion. MTD at 14-17. The Ninth Circuit has held that "[p]reclusion, not *Rooker–Feldman*, applies when 'a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.'" *Henrichs*, 474 F.3d at 614 (quoting *Noel*, 341 F.3d at 1165).

The Full Faith and Credit Act, 28 U.S.C. § 1738, "directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). "Federal courts are compelled by the 'full faith and credit' statute to give collateral estoppel and res judicata effects to the judgments of state courts." *Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712-13 (9th Cir. 1992) (citing 28 U.S.C. § 1738 (1988)). A "court must treat a state court judgment with the same respect it would receive in the courts of the rendering state." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 578 (9th Cir. 2022). The Court therefore applies California law to determine the preclusive effect of a state court order. *Id.* (citing *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005)). Under California law, "[c]ollateral estoppel bars 'relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against

whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" *Wabakken v. California Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015) (quoting *People v. Carter*, 36 Cal. 4th 1215, 1240 (2005)) (alterations in original).

The Court finds that all three elements of collateral estoppel are satisfied here with respect to the October 2021 state court order. As to the first prong, as discussed above, the issue decided before the state court on the ex parte application is identical to the one at issue here: whether the PIA allows Richter to move her claims from arbitration to litigation. *See* RJN Ex. F (state court application). As to the second prong, the Ninth Circuit has previously held that, under California law, "an order compelling arbitration is the final order in a special proceeding," and it is thus "entitled to full faith and credit." *Se. Res. Recovery Facility Auth.*, 973 F.2d at 713. The Ninth Circuit further held that "the denial of an injunction against arbitration is an order compelling arbitration," and it is thus entitled to preclusive effect. *Id.* And the October 2021 state court order is precisely that—the denial of an injunction against arbitration. Finally, as to the third prong, the parties here are identical to those in the state court proceeding.

Richter argues that the full faith and credit statute does not apply here because collateral estoppel does not apply to a state court arbitration order from which an appeal may still be taken, despite the Ninth Circuit's ruling in *Southeast Resource Recovery Facility Authority*. Opp. at 24-26. Richter relies on *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102 (9th Cir. 2010). In that case, Lhotka brought suit against Geographic Expeditions, Inc. ("GeoEx") in state court, and GeoEx filed a motion to compel arbitration in the state court action. *Id.* at 1105. While the state court motion to compel arbitration was pending, GeoEx filed a petition in federal district court to compel arbitration. *Id.* at 1105-06. The district court dismissed for lack of subject matter jurisdiction because the amount in controversy did not exceed $75,000. *Id.* at 1106. GeoEx appealed. *Id.* By the time the Ninth Circuit made a decision, the California Court of Appeal had already held the arbitration agreement to be unenforceable. *Id.* at 1105 n.3. The Ninth Circuit stated in a footnote that the California Court of Appeal's decision did not prevent the federal suit from proceeding. *Id.* It stated that "[u]nder California law, a judgment is not final for the purposes of collateral estoppel until it is free from the potential of a direct attack,

10

i.e. until no further direct appeal can be taken," and that the state court judgment was not yet final "because GeoEx filed a petition for review in the California Supreme Court, which petition remains pending." *Id.* (citing *Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal. App. 4th 776, 787 (1994)). The Ninth Circuit's statement in the footnote in *Lhotka* did not implicate its holding as to the preclusive effect of a motion to compel arbitration in *Southeast Resource Recovery Facility Authority*.

Richter argues more generally that the language in *Lhotka*, coming from *Abelson*, that a judgment is not final for the purposes of collateral estoppel until no further direct appeal can be taken, means that a motion to compel arbitration does not have preclusive effect. Reply at 11-12. She cites to a California case recognizing that "[o]rders granting motions to compel arbitration are generally not immediately appealable" and instead "are normally subject to review only on appeal from the final judgment." *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1121-22 (2012).

The Court is unpersuaded by Richter's argument as to a motion to compel arbitration. The Ninth Circuit decision in *Southeast Resource Recovery Facility Authority* is directly on point, and the Court declines to find that it no longer applies in light of *Abelson*. The Court also notes that other district courts in California, decided after *Abelson*, have held that a state court order compelling arbitration has preclusive effect in federal court under California law, relying on *Southeast Resource Recovery Facility Authority*. *See Smith v. Nerium Int'l, LLC*, No. SACV 18-1088-JVS(PLAx), 2019 WL 4282901, at *6 (C.D. Cal. June 20, 2019); *Brown v. Gen. Steel Domestic Sales, LLC*, No. CV 08-00779 MMM (SHx), 2008 WL 2128057, at *4-5 (C.D. Cal. May 19, 2008).

In her opposition to the motion to dismiss, Richter raises a new argument: that an order on a TRO does not have preclusive effect. Opp. at 25. Richter cites two cases in support of this proposition, neither of which addresses this question head-on. *See Thomas v. Quintero*, 126 Cal. App. 4th 635 (2005); *Adler v. Vaicius*, 21 Cal. App. 4th 1770 (1993). In *Thomas v. Quintero*, the California Court of Appeal was considering an appeal of a denial of a motion to strike. 126 Cal. App. 4th 635. In that case, a plaintiff had brought a petition seeking injunctive relief against a

defendant under California's civil harassment statute, and the defendant filed a special motion to strike under California's anti-SLAPP statute. *Id.* at 641-44. A superior court judge granted a TRO on the civil harassment petition; a different superior court judge denied the special motion to strike; and then the first superior court judge denied an injunction on the civil harassment petition. *Id.* The defendant appealed the denial of the special motion to strike. *Id.* Under California's anti-SLAPP statute, a cause of action is subject to a special motion to strike unless a court decides the plaintiff in the underlying action "has established that there is a probability that [they] will prevail on the claim." *Id.* at 644 (quoting Cal. Code Civ. Proc. § 425.16). The court decided that the fact that the superior court judge denied the injunction on the civil harassment petition indicated that there was no probability that plaintiff would prevail on that petition, and it therefore overturned the denial of the special motion to strike. *Id.* at 664-65. The court, in a footnote, made clear that the fact that the superior court judge granted a temporary restraining order on the civil petition prior to denying the injunction did not change its determination as to plaintiff's probability of prevailing for the purposes of the anti-SLAPP motion to strike. *Id.* at 664 n.21. The court noted that the underlying cause of action was for an injunction, not a TRO, and that the TRO was issued ex parte. *Id.* The court thus stated that "granting of a TRO does not reflect on the merits of the underlying dispute, and does not qualify the enjoining party to 'prevailing party' status." *Id.*

In so stating, the court of appeals cited to *Adler v. Vaicius*, the other case relied on by Richter, which also involved a civil harassment petition. 21 Cal. App. 4th 1770. In that case, the plaintiff filed a petition for an injunction under California's civil harassment statute. *Id.* at 1773. The superior court issued a TRO, and the plaintiff filed a request for dismissal with prejudice prior to a hearing on an injunction. *Id.* at 1773-74. Plaintiff requested an award of attorney fees and costs as prevailing party pursuant to statute. *Id.* at 1774. The court decided that the defendant, not the plaintiff, was the prevailing party, despite the issuance of the TRO, because the plaintiff then dismissed the action. *Id.* at 1776-77.

Neither of these cases stands for the proposition that Richter asserts: that a TRO does not

have preclusive effect.[1] Further, the Court again finds the Ninth Circuit's decision in *Southeast Resource Recovery Facility Authority*. In that case, a party made a similar argument—that "its state court action to enjoin the arbitration proceedings was simply a preliminary injunction action" that that the state court decision was therefore "entitled to no more preclusive effect than any ordinary denial of a preliminary injunction." 973 F.2d at 713. The Ninth Circuit disagreed, stating that the party did not "provide any authority for the proposition that a refusal to enjoin arbitration is treated as an ordinary denial of a preliminary motion instead of an order compelling arbitration" and deciding that "the better view is that a denial of an injunction against arbitration is an order compelling arbitration." *Id.* The same reasoning applies here. Further, the Court notes that Oracle here had the opportunity to, and actually did, file an opposition to the TRO application, and further, the TRO application was denied. *See* RJN Exs. G, H.

The Court also notes that its decision furthers the comity purposes of the full faith and credit doctrine. *See Se. Res. Recovery Facility Auth.*, 973 F.2d at 714. The decision to stay the arbitration rests of state contract law. And "[a] federal court cannot reexamine arguments that already have been considered and rejected by a state court because such review of a state court decision creates needless friction between the state and federal forums." *Id.* Further, it would not be a good use of judicial resources to "reexamin[e] the state court order." *Id.*

The cases cited by Plaintiff give the Court no reason to decline to give preclusive effect to the October 2021 state court order. The Ninth Circuit's decision in *Southeast Resource Recovery Facility Authority* suggests that giving preclusive effect to the state court order is proper. But acknowledging that it is a close call based on Richter's new argument, the Court will also address Oracle's argument that the claim should be dismissed under the Anti-Injunction Act.

---

[1] The Court notes that the opinion submitted by Richter in her Statement of Recent Decision also does not address the issue here. *See* ECF No. 46. Richter points the Court to *White v. Davis*, a decision from the California Court of Appeal. *See* --- Cal. App. 5th ---, No. E077320 (Cal. Ct. App. Jan. 5, 2023). The court in that case discussed the portion of the *Thomas v. Quintero* decision that addressed whether an anti-SLAPP motion to strike can be brought against a civil harassment petition and that discussed the trial court's discretion in using case management tools to ensure that anti-SLAPP motions do not interfere with the efficacy of civil harassment proceedings. *Id.* at *31-33. The holding in *White* is therefore not relevant to the case before this Court.

13

### 3. Anti-Injunction Act

Oracle argues that the Court should dismiss the declaratory relief claim under the Anti-Injunction Act. MTD at 20-21. The Anti-Injunction Act "prohibits the federal courts from interfering with proceedings in state courts." *Monster Beverage Corp. v. Herrera*, 650 F. App'x 344, 346 (9th Cir. 2016) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 145 (1988)). It provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Act also "prohibits courts from issuing declaratory judgments that interfere with state court proceedings." *Monster Beverage Corp.*, 650 F. App'x at 346 (citing *California v. Randtron*, 284 F.3d 969, 975 (9th Cir. 2001)).

The Act "bars federal courts from enjoining ongoing state court proceedings except in specific and narrow circumstances." *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 878 (9th Cir. 2000). "Injunctions must be denied when they are sought for impermissible purposes, such as 'an attempt to seek appellant review of a state decision in the federal district court.'" *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (quoting *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 293 (1970)). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line*, 398 U.S. at 297.

The Ninth Circuit has held that "[a]n arbitration is a 'state proceeding' for purposes of the Act if it has been ordered . . . by a state court in judicial (as opposed to merely ministerial) proceedings." *Prudential*, 204 F.3d at 879 (citing *Empire Blue Cross & Blue Shield v. Janet Greeson's a Place for Us, Inc.*, 985 F.2d 459, 461-62 (9th Cir. 1993)). The Court thus determines that the arbitration between these parties is clearly a state proceeding for purposes of the Act.

Richter argues that the Anti-Injunction Act does not apply here because the "necessary in aid of jurisdiction" exception applies. Opp. at 26-28. In discussing that exception, the Supreme Court explained that "a federal court does not have the inherent power to ignore the limitations of

14

[the Act] and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right." *Atl. Coast Line*, 398 U.S. at 294. Further, the Act applies regardless of whether the federal court has jurisdiction; even if it does, "it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction." *Id.* at 294-95. The Supreme Court explained that the necessary in aid prong "implies something similar to the concept of injunctions to 'protect or effectuate' judgments," as they both "imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* at 295.

In that case, the Supreme Court held that the Act applied. It noted that "the state and federal courts had concurrent jurisdiction . . . , and neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Id.* at 295. Thus, the fact that the state court assumed jurisdiction over the state law claims and the federal preclusion issue "did not hinder the federal court's jurisdiction so as to make an injunction necessary to aid that jurisdiction." *Id.* at 296. The Supreme Court also reiterated that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Id.*

The Court here finds that an injunction is not "necessary to aid its jurisdiction." Richter argues that the exception applies "because the PIA granted this Court jurisdiction to adjudicate any proceeding that is 'in any way connected with' the PIA." Opp. at 28. But the PIA is not specific to federal court. And the fact that this Court may have jurisdiction over the claims is not enough to show that an injunction of the state court action is necessary to aid in the Court's jurisdiction. The state court also has jurisdiction over the state law claims at issue here, as well as the state law contract issue of whether the PIA applies. The Court recognizes that "[i]njunctions must be denied when they are sought for impermissible purposes, such as 'an attempt to seek appellant review of a state decision in the federal district court.'" *Flanagan*, 143 F.3d at 545 (quoting *Atl. Coast Line R. Co.*, 398 U.S. at 293). The Court determines that is exactly what is happening here.

One of the cases that Richter points to, *Flanagan v. Arnaiz*, provides a useful comparison. *See* Opp. at 27. In that case, the Ninth Circuit determined that the necessary in aid exception did

15

1    apply. 143 F.3d at 545-46. There, the parties had entered a settlement agreement in which the

2    federal court had expressly retained jurisdiction. *Id.* The Ninth Circuit determined that litigation

3    in state court was not reasonable given the federal district court's "explicit retention of

4    jurisdiction." *Id.* at 546. That case is thus clearly distinguishable from the situation at issue here.

5    The parties here did not agree that the federal district court would resolve any employment

6    disputes between the parties, or even that it alone would decide any disputes related to the PIA.

7    Instead, both the state and federal courts have jurisdiction over the claims, and Richter chose state

8    court as her forum. Allowing Richter to now pursue the same claims and arguments in federal

9    court that she already brought and lost in state court would encourage the forum shopping that the

10   Act was designed to prevent and would create "needless friction between state and federal courts."

11   *See Atl. Coast Line R. Co.*, 398 U.S. at 286 (quoting *Oklahoma Packing Co. v. Oklahoma Gas &*

12   *Elec. Co.*, 309 U.S. 4, 9 (1940)).

13   The Court determines that the Anti-Injunction Act applies here, and therefore dismissal of

14   the claim for declaratory relief as to Richter's ability to litigate all of her pending legal claims in

15   the arbitral proceeding is proper. *See Prometheus Dev. Co. v. Everest Props.*, 289 F. App'x 211,

16   213 (9th Cir. 2008) ("Because the Anti-Injunction Act bars the sole remedy Plaintiffs seek, they

17   have therefore 'fail[ed] to state a claim upon which relief can be granted.'"). The Court therefore

18   GRANTS Oracle's motion to dismiss Richter's claim for declaratory relief.

19   **C.  All Remaining Claims**

20   The remaining claims, causes of action 2-8, are all claims that Richter brought against

21   Oracle in the state court action that has been compelled to arbitration. The Court has denied

22   Plaintiff's claim for a judicial declaration that these claims can now be brought in this Court. The

23   Court therefore GRANTS Oracle's motion to dismiss these claims.[2]

---

[2] By this Order the Court is not deciding whether Richter has a contractual right to litigate in court claims "in any way connected" to the PIA. Compl. Ex. A, ¶ 12. In fact, Richter has exercised her right under Paragraph 12 of the PIA—she elected state court. Nowhere in the PIA does she have the option of selecting state court until she loses, and then jumping to federal court in the hopes of finding a more sympathetic forum. The PIA expressly allows the selection of federal <u>or</u> state court, not both. *Id.*

**VI.     ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Oracle's motion to dismiss is GRANTED.

Dated:  January 31, 2023

_____
BETH LABSON FREEMAN
United States District Judge